IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| RODRICK WEST, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 1:19-CV-219 (LAG) |
| | : | |
| SHIRLEY ADAMS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

# ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 22). For the reasons set forth below, Defendants' Motion is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff Rodrick West initiated this action in the Superior Court of Dougherty County, Georgia against Defendants Dougherty County; Lieutenant Shirley Adams, Lieutenant Anita Allen, and Captain Craig Dodd of the Dougherty County Sheriff's Office, in their individual and official capacities; and District Attorney Gregory W. Edwards and Assistant District Attorney Shaleia Threadcraft of the Dougherty Judicial Circuit, in their individual and official capacities. (Doc. 1-2). Plaintiff's claims arise from his allegedly unlawful incarceration and prosecution for elder abuse. (*See id.*). Defendants Edwards and Threadcraft removed the action to this Court on December 3, 2019. (Doc. 1). Defendants Edwards and Threadcraft filed a Motion for Judgment on the Pleadings. (Doc. 3). The Court granted Defendants Edwards and Threadcraft's Motion for Judgment on the Pleadings and dismissed the claims against them in their individual capacities. (Doc. 16).

The Court also dismissed Plaintiff's Complaint as an impermissible shotgun pleading but granted him leave to file an amended complaint. (Doc 16). Plaintiff timely filed the operable Amended Complaint against Defendants Adams, Dodd, and Allen, all in their individual capacities. (Doc. 17). Defendants filed the instant Motion for Summary

Judgment (Doc. 22), Plaintiff responded (Doc. 30), and Defendants filed a reply (Doc. 31). Accordingly, the Motion is ripe for review. M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (per curiam) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Allen*, 121 F.3d at 646. The Court shall, however, "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie*

2

*Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24; *Barreto*, 331 F. App'x at 673; *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). "When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556–57 (11th Cir. 2014) (citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

Middle District of Georgia Local Rule 56 further requires that "documents and other record materials relied upon by [the moving party] be clearly identified for the court." M.D. Ga. L.R. 56 "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." (*Id.*). In disputing some facts, Plaintiff states that he "has no personal knowledge of the statement." (*See, e.g.*, Doc. 30-3 ¶ 6). Under Local Rule 56, "[t]he respondent to a motion for summary judgment may not assert insufficient knowledge to admit or deny a material fact asserted by the movant unless the respondent has complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure," which permits "a nonmovant [to] show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Where Plaintiff does not comply with Rule 56(d)'s

affidavit/declaration requirement or cite any material in the record to support his denial of material facts, the Court considers such facts undisputed for the purposes of Defendants' Motion for Summary Judgment. *Id.*; Fed. R. Civ. P. 56(e)(2).

## FACTUAL BACKGROUND

Plaintiff's claims arise from his allegedly unlawful incarceration and prosecution for elder abuse. In November 2012, Plaintiff was living with his 81-year-old mother, Verma Walker. (Doc. 22-1 at ¶ 1). Plaintiff had lived with his mother in her home for 20 years, and Plaintiff's brother, Vernon West, had been living there for 6-7 months. (*Id.* ¶¶ 2, 3). On November 7, 2012, Vernon West called EMS reporting that Verma Walker was not eating and was dehydrated. (*Id.* ¶ 4). The EMS entered Verma Walker's room and immediately noticed a foul odor and a ring of dried urine and feces around the bed. (*Id.* ¶¶ 5, 6). Verma Walker weighed 64 pounds and was non-verbal. (*Id.* ¶¶ 7, 10). The EMS transported Verma West to Phoebe North Hospital, where the emergency room staff observed ants and maggots in her sores. (*Id.* ¶ 13). Verma West's kidneys had shut down, she had a collapsed lung, and she was placed on a ventilator. (*Id.* ¶¶ 42, 43). Verma West was transferred to Columbus Specialty Hospital and passed away in hospice care on February 19, 2013. (*Id.* ¶¶ 44, 45).

While Verma Walker was in the hospital, the Dougherty County Sheriff's Office obtained a search warrant for her home and searched the home. (*Id.* ¶¶ 22, 23). Adams and Dodd entered Verma Walker's bedroom and observed feces and old food, ants on the bed and nightstand, fecal and urine stains on the bedding and chair cushion, and a non-functioning toilet. (*Id.* ¶ 31). After the search, Plaintiff and his brother were taken to the Sheriff's office for interviews. (*Id.* ¶ 33). Plaintiff waived his *Miranda* rights and admitted his mother should have been put in the hospital months before, but told the officers that his brother was charged with their mother's care. (*Id.* ¶¶ 34, 35). Defendants assert Plaintiff's description of his interaction with his mother shifted several times, with him initially claiming he had not spoken with his mother for a week, then stating he had not spoken to her for a month, and eventually admitting he saw her every day. (Doc. 22-1 ¶ 36).

Furthermore, Defendants state Plaintiff knew his brother was not taking proper care of their mother and admitted that he, himself, had neglected their mother. (*Id.* ¶¶ 36, 37). Plaintiff, on the other hand, denies saying he knew his brother was not taking proper care of their mother, and Plaintiff also denies saying he neglected her. (Doc. 30-3 ¶¶ 36, 37). Plaintiff directs the Court to view "Plaintiff's interview attached to Adams Affidavit" in support of his contention that he did not abuse his mother. (*Id.* ¶ 36). The report of the interview indicates that Plaintiff was asked, "Do you feel like you and your brother have done a good job taking care of your moma?" and Plaintiff answered, "No, we haven't." (Doc. 22-3 at 32). The transcript also indicates that, at one point, Plaintiff said, "I did not neglect her. I did everything I could," but later in the interview, when asked, "Do you feel you neglected her?" Plaintiff answered, "In a sense, yeah." (*Id.* at 33, 34). Further, in his own affidavit, Plaintiff states, "I was negligent in not checking behind [my brother] to make sure Mama was being properly cared for," and "I had not been cruel to my mother, if anything I had been negligent." (Doc. 30-1 ¶¶ 14, 16).

Plaintiff and his brother were charged with felony cruelty to an elder person in violation of O.C.G.A. § 16-5-100. Adams obtained arrest warrants for Plaintiff and his brother and arrested them on November 10, 2012. (Doc. 22-1 ¶¶ 40, 41). During Plaintiff's bond hearing, Adams testified that Plaintiff was a flight risk due to his out-of-state relatives. (*Id.* ¶ 47). Defendants completed their investigation on July 18, 2013, at which time their case file was turned over to the District Attorney's Office. (*Id.* ¶¶ 48, 50). On July 9, 2014, a grand jury indicted Plaintiff. He bonded out of jail on January 5, 2016, and, due to a violation of his right to a speedy trial, the charge against him was dismissed on November 1, 2017. (*Id.* ¶¶ 51–53).

## DISCUSSION

### I. Defendants' Motion for Summary Judgment on Plaintiff's § 1983 Claim

#### A. Qualified Immunity

Plaintiff asserts a claim against Defendants, in their individual capacities, for malicious prosecution in violation of the Fourth Amendment pursuant to § 1983. (Doc. 17 ¶¶ 41–43). In response, Defendants argue qualified immunity bars Plaintiff's claim.

5

(Doc. Doc. 22-2 at 8–12). "Qualified immunity protects a government official from being sued for damages under § 1983 unless preexisting law clearly establishes the unlawfulness of [her] actions, such that any reasonable official in [her] position would be on notice that [her] conduct was unlawful." *Hunter v. Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "To be entitled to qualified immunity, the government official must first establish that [she] was acting within [her] discretionary authority at the time of the allegedly unlawful conduct." *King v. Pridmore*, 961 F.3d 1135, 1142 (11th Cir. 2020).

An officer acts within her discretionary authority when she "(a) perform[s] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (alteration omitted) (quoting *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)). The Court looks at "the general nature of the [officer's] action," and not whether the actions "may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* (quoting *Holloman*, 370 F.3d at 1266). In general, "[i]nvestigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers." *Mears v. McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012); *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995), *as amended* (June 14, 1995) (stating there is "no doubt" that officers executing a search warrant "were acting within their discretionary authority"). Thus, at all times relevant to Plaintiff's claim, Defendants were acting within their discretionary authority.

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561

F.3d 1288, 1291 (11th Cir. 2009). A plaintiff meets this burden by showing (1) that "the officer's conduct amounted to a constitutional violation" and (2) that "the right violated was 'clearly established' at the time of the violation." *Id.* The Court "may consider in any order whether the plaintiff has satisfied her burden." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (citing *Pearson*, 555 U.S. at 236). In conducting this analysis, the Court "must take the facts in the light most favorable to the party asserting the injury. When a district court considers the record in this light, it eliminates all issues of fact." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). "With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute." *Id.*

### B. Malicious Prosecution

Plaintiff asserts a Section 1983 claim for malicious prosecution in violation of the Fourth Amendment. (Doc. 17 ¶¶ 41–43). The Eleventh Circuit has "identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood*, 323 F.3d at 881 (collecting cases). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Id.* Plaintiff appears to make two arguments in support of his malicious prosecution claim. Plaintiff appears to argue that there was no probable cause to support his arrest and that Defendants failed to tell prosecutors about exculpatory evidence.

#### 1. Defendants Had Arguable Probable Cause to Arrest Plaintiff

Plaintiff first argues that Defendants violated Plaintiff's Fourth Amendment rights by "arresting [and] prosecuting Roderick West who committed no crime." (Doc. 30 at 16). Plaintiff asserts Defendants violated his clearly established constitutional rights by arresting Plaintiff because "there has never been a finding of fact that determined that [Plaintiff] committed a crime in the greatest sense or that he was a caregiver who could have been noted as negligent in the least because he has not been convicted." (Doc. 30 at

7

17). Such a finding of fact is not required. Rather, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256–57 (11th Cir. 2010)

"Probable cause" is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* "[A]n officer need not have actual probable cause, but only 'arguable' probable cause" to be afforded qualified immunity. *Id.* at 1257. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Rushing*, 599 F.3d at 1266. "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime . . . ." *Skop*, 485 F.3d at 1137. Showing arguable probable cause, however, "does not require an arresting officer to prove every element of a crime . . . ." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). In determining whether an arresting officer had arguable probable cause, the Court only considers "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). "Whether a reasonable officer could have believed he had probable cause to arrest depends on the totality of the circumstances." *Wesby*, 138 S. Ct. at 586. "This standard does not shield officers who unreasonably conclude that probable cause exists." *Carter*, 821 F.3d at 1320 (citation omitted).

Defendants had probable cause, and certainly arguable probable cause, to arrest Plaintiff under O.C.G.A. § 16-5-101(a), which provides:

> A guardian or other person supervising the welfare of or having immediate charge, control, or custody of a[n] … elder person … commits the offense of neglect … when the person willfully deprives a[n] … elder person … of health care, shelter, or necessary sustenance to the extent that the health or well-being of such person is jeopardized.

An "elder person" means a person of 65 years of age or older. O.C.G.A. § 16-5-100(4).

8

Plaintiff argues that Defendants did not have probable cause to arrest him because his brother, Vernon West, told Defendants that "it was his duty and responsibility to care for his mother as it relates to cooking, feeding her and taking care of her." (Doc. 30 at 9). The fact that Plaintiff's brother was the primary caregiver for Ms. West and wanted to take full responsibility for the crime does not negate the existence of probable cause to arrest Plaintiff for the crime. Plaintiff, according to the information known to officers when the arrest warrant was sought, certainly was an "other person supervising the welfare of or having immediate charge of" his mother. *Id.* Plaintiff stated that he checked on his mother "everyday." (Doc. 22-3 at 31). When asked if he felt "like you and your brother have done a good job taking care of your moma?" Plaintiff answered "No, we haven't." (*Id.* at 32).

Moreover, Plaintiff admitted he had some immediate caretaking role because he took his mother food, looked in on her every day, was the last person to change the soiled sheets on her bed, and instructed his brother to call the hospital the day their mother was removed from the house. (*Id.* at 34). Officers also had information that he deprived his mother of health care and sustenance to the point that her health and well-being were jeopardized—as evidenced by her condition when she was removed from the home and her subsequent death. Plaintiff acknowledged being in the room and seeing food that his mother, who he knew was suffering from Alzheimer's, had not eaten but instead thrown on the floor, in the bathroom sink, and in the toilet. (*Id.* at 31). Despite this, he did nothing to make sure that she ate or to get her medical help before her last day in the home. When asked if he felt he neglected his mother, Plaintiff answered, "[i]n a sense, yeah."[1] (*Id.* at 29–34).

Finally, Plaintiff's mother was 81 years old, and was therefore an elderly person under O.C.G.A. § 16-5-100(4). Thus, there was evidence of each element of the offense

---

[1] Plaintiff's denial that he admitted to neglecting his mother is contradicted by his statements during his interview and his affidavit. (Doc. 22-3 at 32–34; Doc. 30-1 ¶ 14). Plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, there is no genuine issue of material fact as to this issue.

of elder abuse and, therefore, actual probable cause to support the warrant for Plaintiff's arrest.

### 2. Plaintiff Fails to Show a Constitutional Violation Based on Defendants' Failure to "Communicate" Exculpatory Evidence

Plaintiff also argues that Defendants violated his constitutional rights "because they were aware of the exculpatory statements and declined to actually communicate the statements to the DA; choosing to simply turn over the file." (Doc. 30 at 14). "When confronted with a government official's invocation of qualified immunity, we have been instructed by the Supreme Court to first decide the threshold issue . . . of whether the official has deprived the plaintiff of a constitutional right at all." *Porter v. White*, 483 F.3d 1294, 1302 (11th Cir. 2007). Based on what Plaintiff appears to argue, the officers have not deprived Plaintiff of a constitutional right.

Plaintiff appears to attempt to argue that Defendants violated a "'clearly established' principal of constitutional law; namely, the due process principle that forbids police from intentionally withholding *Brady* material from prosecutors." *Porter v. White*, 483 F.3d 1294, 1302 (11th Cir. 2007) (referencing *Brady v. Maryland*, 373 U.S. 83, 84 (1963)). Plaintiff does not complain that the officers withheld exculpatory material from the prosecutors in his case. Nor does he complain that he, the defendant in the underlying criminal action, was not given the alleged exculpatory evidence. That prosecutors turned over the entire case file, including the allegedly exculpatory statements, is not in dispute. Defendants assert that they "provided their entire investigative file, including recorded statements, to the District Attorney's Office on July 18, 2013." (Doc. 30 at 5, citing to Doc. 22-3 at 8.) This assertion is not in dispute. In fact, rather than argue that the exculpatory statements were withheld from him, Plaintiff argues that the police officers "simply turn[ed] over the file" but did not "communicate"—or highlight—those statements when turning the file over to the prosecutors.

The Court is unaware of any legal, let alone constitutional, obligation of police officers to "communicate" or highlight exculpatory statements that are part of the case file to prosecutors when transferring the file. As the Court of Appeals explained in

10

*Porter*, the Defendants' "duty as [] law enforcement official[s] [is] to turn over exculpatory evidence to the prosecution. . . ." *Porter*, F.3d at 1306. As there is no genuine issue of material fact as to whether Defendants adhered to that duty, Plaintiff has not alleged a Constitutional violation.

Plaintiff has failed to show a constitutional violation as there was probable cause to support the arrest warrant and exculpatory information was not withheld from him. Accordingly, Defendants are entitled to qualified immunity, and summary judgment is **GRANTED** as to Plaintiff's malicious prosecution claim.

## II.    Plaintiff's State Law Claim

Plaintiff's remaining claim is for a violation of Georgia tort law. Federal district courts have supplemental jurisdiction to entertain state law claims so related to claims within the Court's original jurisdiction as to form part of the same case or controversy. 28 U.S.C. § 1367(a). Once a plaintiff's federal claims are dismissed, however, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant[s]." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). A court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). While the "decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court," the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citation omitted). In addition, a plaintiff has "at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Sci.–Atlanta, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012) (citations omitted); *see also* 28 U.S.C. § 1367(d) (providing that state law claims brought in federal court with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). Because

11

Plaintiff's federal claim has been dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claim.

## CONCLUSION

For the reasons provided above, Defendants' Motion for Summary Judgment (Doc. 22) is **GRANTED**. It is hereby **ORDERED** and **ADJUDGED** that Plaintiff West shall take nothing and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this 30th day of September, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**